UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODY FIRNENO and CHRISTOPHER
FRANKE,

        Plaintiffs,

v.

NATIONWIDE MARKETING SERVICES,
INC., et al.,

        Defendants.

_____/

Case No. 2:14-cv-10104

HONORABLE STEPHEN J. MURPHY, III

MAGISTRATE R. STEVEN WHALEN

**OPINION AND ORDER DENYING MOTION TO DISMISS [66],
GRANTING RENEWED MOTION TO ENFORCE DISCOVERY [63],
IMPOSING RULE 37 SANCTIONS, AND APPOINTING DISCOVERY MASTER**

Plaintiffs Jody Firneno and Christopher Franke allege that Defendants Nationwide

Marketing Services, Inc. ("Natimark"), Leon Saja, and other corporate officers of Natimark

(collectively, "Defendants") violated the Fair Credit Reporting Act, 15 U.S.C. § 1681b, by

selling and/or providing consumer lists to third parties containing their private financial

information. Compl., ECF No. 1. Before the Court are Defendants' motion to dismiss and

Plaintiffs' renewed motion to enforce discovery. On December 6, 2016, the Court held a

hearing on both motions. For the following reasons, the Court will deny Defendants' motion,

grant Plaintiffs' motion, impose sanctions, and appoint a Discovery Master.

**BACKGROUND**

I.    <u>Non-Economic Damages</u>

In their complaint, Plaintiffs allege that they and the class members "have suffered

an unwarranted invasion of privacy and violation of their rights under the FCRA." *See*

Compl. ¶¶ 39, 46, 56, 70, 79, ECF No. 1. They later stipulated to the with-prejudice

dismissal of "actual and non-economic damages arising out of emotional and mental

distress, including but not limited to: worry, anxiety, fear of identity theft, embarrassment, humiliation and mortification, among others." *See* ECF Nos. 51, 72. On September 27, 2016, Defendants filed a motion to dismiss the case under Rule 12(b)(1) for lack of subject matter jurisdiction in light of the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). ECF No. 66.

II.   Discovery Issues

On November 6, 2015, the Court appointed Daniel Sharkey as Discovery Master. He submitted a Report and Recommendation regarding the Plaintiffs' motions to compel discovery, Plaintiffs timely objected to the Report, and the Court issued an order rejecting Plaintiffs' objections and adopting the Report. Pursuant to that order, Defendants had 14 days to produce specified documents and answers to interrogatories. *See* Order 4, ECF No. 50; Report 11–12, ECF No. 39. They failed to comply.

Three weeks after the order issued, Plaintiffs filed a motion to enforce disclosure of the discovery required by the Court's order, and for appropriate discretionary relief under Civil Rule 37(b)(2). ECF No. 52. On July 14, 2016, the Court found that Defendants failure to comply with the Court's Order was not substantially justified, and ordered Defendants to pay the Plaintiffs' reasonable expenses, including attorney fees, incurred in filing the motion. The Court also stated that "any further failure to cooperate with the progression of the case or to comply with an order of the Court will be treated as conduct tantamount to bad faith, and will result in harsher sanctions under Civil Rule 37, up to and including the Court's issuance of a default judgment against the Defendants." Order 2, ECF No. 56.

On September 14, 2016, Plaintiffs filed a renewed motion to enforce discovery, and for Rule 37(b) sanctions due to Defendants' alleged continued noncompliance with the

Court's orders. Mot., ECF No. 63.

## STANDARD OF REVIEW

A party may seek dismissal of an action by challenging subject matter jurisdiction under Rule 12(b)(1), at which point the plaintiff bears the burden of proving jurisdiction. *Madison–Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). A challenge to standing addresses a court's subject matter jurisdiction. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). A district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.* Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack challenges the factual existence of subject matter jurisdiction. No presumption of truth applies to the factual allegations, and the court can weigh the evidence to determine its power to hear the case. *Ritchie*, 15 F.3d at 598.

## DISCUSSION

I.   Defendants' Motion to Dismiss

Defendants argue that Plaintiffs lack standing in light of the Supreme Court's recent decision in *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016), a case that addressed a standing issue relevant to the instant matter — namely, whether Plaintiffs have clearly alleged facts to show that they have suffered a concrete "injury in fact." Mot. Dism., ECF No. 66.

Article III standing "is a doctrine rooted in the traditional understanding of a case or

3

controversy." *Spokeo*, 136 S. Ct. at 1547. As the party invoking federal jurisdiction, a plaintiff must clearly allege facts demonstrating that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Injury in fact, the "first and foremost" of standing's three elements, is a "constitutional requirement . . . that Congress cannot erase . . . by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (citations and internal quotation marks omitted). A plaintiff must establish an injury in fact by showing that he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury must also be 'concrete,'" which is to say the injury "must actually exist." *Id.*

In *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), the Sixth Circuit reasoned that "Congress has the power to create new legal rights, [including] right[s] of action whose only injury-in-fact involves the violation of that statutory right," and thus held that the Fair Credit Reporting Act (FCRA) "permits a recovery when there are no identifiable or measurable actual damages." 579 F.3d at 705–06. But in *Spokeo*, the Supreme Court clarified that although

> Congress may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law . . . Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete

4

harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 136 S. Ct. at 1549 (citations and internal quotation marks omitted). Since "[a] violation of one of the FCRA's procedural requirements may result in no harm," *id.* at 1550, courts must determine whether Plaintiffs suffered actual harm apart from the alleged statutory violation, or "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.*

Defendants argue that Plaintiffs cannot articulate the sufficient degree of risk to meet the concreteness requirement of Article III standing. In support, Defendants note that Plaintiffs merely "allege that they received three advertisements in the mail, which they may have shown to their spouses and attorneys," and point to Plaintiffs' with-prejudice dismissal of "any claims for damages that could be arguably connected to alleged injuries arising from the generally alleged 'invasion of privacy.'" Mot. Dism. 8–9, ECF No. 66 (citing Firreno Dep. 11:27–29, ECF No. 66-3 and Franke Dep. 37, ECF No. 66-4).

Plaintiffs contend that the Defendants caused concrete and particularized harm by illegally accessing Plaintiffs' consumer reports and invading their privacy by actually obtaining "private financial information, including credit and FICO scores, the amount of debt, and addresses and the last four digits of the social security numbers of thousands of consumers." Resp. 6–7, 10, ECF No. 68.

Numerous district courts have applied *Spokeo* and reached different conclusions as to whether an alleged invasion of privacy allegation satisfies the injury-in-fact concreteness requirement. The analysis in *Burke v. Fed. Nat'l Mortgage Ass'n* is particularly persuasive. No. 3:16CV153-HEH, 2016 WL 4249496 (E.D. Va. Aug. 9, 2016). In *Burke*, as here, a plaintiff alleged that her privacy was invaded when the defendant obtained her credit report

without a permissible purpose in violation of 15 U.S.C. § 1681b(f). *Id.* Judge Hudson

reasoned that

> [t]he FCRA was meant to protect the interest of privacy. The portion of the FCRA at issue here is clear that one's consumer report is not to be obtained except for the limited purposes specifically provided by the statute. The language and context of this provision seem to establish a statutory right to privacy based in one's consumer report. As *Spokeo* counsels, this Court must defer to history and the judgment of Congress in deciding whether the alleged harm constitutes an injury-in-fact. In some sense, the right at issue can appear procedural, as it is a mechanism intended to prevent further harms. Yet, given the purposes, framework, and structure of the FCRA, the right to privacy established by the statute appears to be more substantive than procedural . . . Plaintiff's alleged violation of privacy is a concrete harm, even if that harm does not lead to other, more tangible harms. Therefore, by claiming that the Defendant obtained her consumer report without a lawful purpose under the FCRA, Burke has pleaded a concrete harm.

*Id.* at *4. Like the plaintiff in *Burke*, Plaintiffs claim that Defendants unlawfully obtained their

credit and FICO scores, along with other private information. Like *Burke*, the Court finds

Plaintiffs have alleged a concrete harm — their right to privacy is "more substantive than

procedural." As a result, Plaintiffs' stipulated dismissal of any non-economic damages is

immaterial: Plaintiffs have standing for the invasion of privacy claim regardless of whether

they can collect non-economic damages. The Court will deny Defendants' motion.

## II.   Renewed Motion to Enforce Discovery

There is no explanation for the discovery issues here other than the Defendants'

refusal to comply with the Court's discovery orders. A week after the Court issued the July

14, 2016 order enforcing its March 24, 2016 order, Plaintiffs' counsel conferred with

Defendants counsel and explained how the supplemental discovery responses failed to

comport with the Court's order adopting the Master's Report. Plaintiff provided a written

itemization detailing the deficiencies, and gave Defendants until August 8, 2016 to comply.

According to Plaintiffs, Defendants failed to meaningfully supplement their discovery

responses and still continue to withhold information the Court ordered them to produce. Specifically, Plaintiffs claim Defendants have failed to produce (1) unredacted consumer lists (Production Requests # 8, 9 & 10); (2) the identity of the entity that sold them the lists (Interrogatory # 4); (3) the complete chain of correspondence involving the sale of the lists (Production Requests 3, 4 & 6); and (4) electronic records of emails with the Zero Debt defendants and the data used to prepare letters to the class members.

Plaintiffs cite examples of Defendants' noncompliance, including objections and partial or qualified responses. For instance, Defendants respond to a number of requests by providing answers only "upon information and belief." *See* Interrog. 8–9, ECF No. 63-2; Req. Prod. 3, 6, ECF No. 63-3. Also, Defendants' responses are incomplete and fail to meet the substance of the requests. *See* Interrog. 4, 5, 7–9, ECF No. 63-2; Req. Prod. 21–23, 28–29, ECF No. 63-3. Plaintiffs illustrate by pointing to Requests for Production 41 and 42, and Interrogatory 4:

> 41. All documents preserved by you in response to the subpoena served on you a copy of which is attached as Exhibit A.
>
> **Reply**: Defendant has destroyed no documents, certainly since receiving notification of this litigation. By and large, Defendant does not destroy documents, in any event.
>
> . . . 42. Each and every document involving, memorializing or relating to any complaints, investigations, inquiries, reinvestigations, audits, administrative proceedings, and civil or criminal actions regarding request and/or receipt of consumer reports and/or consumer credit information at any time.
>
> **Reply**: Defendant has not been a party to litigation related to the sale of consumer data other than these claims and the claims pending in Florida. Upon information and belief, Plaintiffs are aware of and in possession of that Complaint.
>
> . . . 4. For any consumer list you accessed, used, or sold that included data concerning either Plaintiff in the five years preceding the filing of the

complaint, identify

> a. the date on which you accessed the list;
>
> b. the date on which you provided or sold the list;
>
> c. the identity of the subscriber to whom you provided the list;
>
> d. the permissible purpose certified to you by your subscriber;
>
> e. the individual or entity from whom you obtained the data comprising the list;
>
> f. any certification you provided to the individual or entity from whom you purchased the list and the person who made the certification.

> **Answer**: Defendant has produced the invoices between Nationwide Marketing and 1-800-Zero Debt. The data on the invoices does not indicate exactly what was sold to 1-800-Zero Debt. At this point, Defendant is able to confirm that a list was sent to Zero Debt on February 1, 2012 and March 19, 2012. Each time, Zero Debt confirmed that the information would be used for a permissible purpose and that the list would only be used on one occasion.

Mot. Enforce 8–11, ECF No. 63.

In response, Defendants do not contend that they have complied fully with the Court's discovery orders. Instead, they argue the merits of the case, and claim that (1) they have repeatedly reached out to Plaintiffs' counsel to discuss the responses, (2) they are confused by Plaintiffs' assertion that they have continued to object to Plaintiffs' requests, (3) Plaintiffs "have ample discovery" because they conducted a three-hour deposition of one of the Defendants, Leon Saja, and (4) they are continuing to gather documents in order to prepare supplemental discovery responses. Resp. 2–5, ECF No. 64.

None of those points remedy the fact that Defendants have had multiple opportunities to fully comply with the Court's orders and have failed to do so. Instead of objecting to the Discovery Master's report when it was issued back in December 2015, Defendants have

8

2:14-cv-10104-SJM-RSW   Doc # 73   Filed 01/10/17   Pg 9 of 12   Pg ID 1730

engaged in delay tactics and willful noncompliance.

Civil Rule 37(b)(2) authorizes the Court to sanction behavior when a disobedient party fails to show that noncompliance was substantially justified, or that an award of reasonable expenses and fees would be unjust. Defendants have not provided adequate reasons for the repeated noncompliance. In its earlier order, the Court warned them that "any further failure to cooperate with the progression of the case or to comply with an order of the Court will be treated as conduct tantamount to bad faith, and will result in harsher sanctions under Civil Rule 37." The Court will issue those harsher sanctions now: (1) Defendants shall pay the Plaintiffs' reasonable expenses, including attorney fees, incurred with the present motion, *see* ECF Nos. 63, 67; (2) Defendants shall pay the Plaintiffs' reasonable expenses, including attorney fees, incurred with the Plaintiffs' motions to compel filed on March 13, 2015, *see* ECF Nos. 25, 26, 30, 40, 44; (3) Defendants shall pay Plaintiffs' share of the Discovery Master's fees and expenses associated with his appointment and resolution of the earlier discovery issues through the report issued on December 10, 2015; and (4) Defendants shall pay the entirety of the Discovery Master's fees and expenses associated with his upcoming assessment of the discovery issues.

If the Defendants continue to defy the Court's orders, the Court will impose harsher sanctions, including directing that certain designated facts be taken as established for purposes of the action as to Plaintiffs' claims, prohibiting Defendants from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, and treating the noncompliance as contempt of the Court. *See* Fed. R. Civ. P. 37(b)(2).

III.   Discovery Master

9

The re-appointment of attorney Daniel Sharkey as Discovery Master will promote efficiency, conserve judicial resources, and expedite the ultimate resolution of the litigation. Fed. R. Civ. P. 53. He is hereby re-appointed as Discovery Master under Civil Rule 53, and is authorized and empowered to supervise, manage, and make recommendations to the Court regarding the disposition of discovery disputes, the completion of discovery, and any other discovery-related issues that arise. His earlier-filed affidavit satisfies Civil Rule 53(b)(3)(A).

On April 29, 2014, Plaintiffs filed a motion to certify class. On July 7, 2014, a stipulated order was entered holding the motion in abeyance pending the completion of discovery, and permitting Plaintiffs to "submit a supplemental memorandum of facts and authorities and Defendants may submit its response." Stip. Or., ECF No. 20. A new briefing schedule was to have been established following a scheduling conference, but after the conference was held, a scheduling order was not entered. On August 13, 2014, the parties submitted a Joint Discovery Plan and proposed the following dates:

As to Class Claims:

- Fact discovery, including fact depositions:        8/15/15
- Experts and expert reports:        5/15/15
- Expert rebuttal reports:        6/15/15
- Expert depositions:        7/15/15
- Updated motion for class certification filed:        8/15/15
- Response to updated motion filed:        9/15/15
- Reply to Response filed:        10/9/15

As to Individual Actions:

- Fact discovery:        8/15/15

Before discovery ended, Plaintiffs filed their motions to compel, the Court appointed the Discovery Master, and Defendants delayed the proceedings. Now, the Discovery

Master should (1) ascertain exactly how much of discovery has been completed, (2) supervise the exchange of the remaining discovery, (3) detail the extent of Defendants' noncompliance with discovery to date, (4) recommend specific Rule 37 sanctions in light of that noncompliance, and (5) help the parties agree upon the following scheduling order and briefing schedule for the updated motion to certify class:

As to Class Claims:

- All remaining class discovery:           MM/DD/YY
- Updated motion to certify class filed:    MM/DD/YY
- Response to updated motion filed:         MM/DD/YY
- Reply to Response filed:                  MM/DD/YY
- Dispositive motion deadline:              30 days after disposition of motion to certify class

As to Individual Actions:

- All remaining fact discovery:             MM/DD/YY

Because the renewed need of a Discovery Master is almost entirely Defendants' fault, the Court will shift the cost of the Discovery Master's remaining work onto the Defendants. The Discovery Master shall be compensated at his usual rate and reimbursed for reasonable travel expenses. The fees and expenses of the Discovery Master shall be paid entirely by the Defendants, subject to redistribution by the Court upon the recommendation of the Discovery Master or in the discretion of the Court.

The Discovery Master's re-appointment shall become effective immediately, and the parties shall schedule an initial meeting with the Discovery Master to take place no later than January 27, 2017. If the parties cannot reach an agreement that leads to the completion of discovery, the filing of a renewed motion to certify class, and a firm scheduling order for the remainder of the case, the Discovery Master shall make recommendations to the Court regarding the contested issues. The Discovery Master may

conduct hearings and conferences with the parties in the manner and at the times and locations he deems appropriate. If he so chooses, he may outline the details and procedures governing the supervision and management of discovery in a further order, and submit the order to the Court after consultation with counsel.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' Motion to Dismiss [66] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Motion to Enforce Discovery [63] is **GRANTED**. The parties shall **CONTACT** the Discovery Master by January 13, 2017 and schedule an initial meeting to take place no later than January 31, 2017.

**IT IS FURTHER ORDERED** that Plaintiffs have 14 days from the date of this order to **FILE** an itemization of their reasonable fees and expenses identified for reimbursement above.

**SO ORDERED.**

         s/Stephen J. Murphy, III
         STEPHEN J. MURPHY, III
         United States District Judge

Dated: January 10, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 10, 2017, by electronic and/or ordinary mail.

         s/David P. Parker
         Case Manager